UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 5:10-CR-121-KSF-REW-3 |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| LAWRENCE THOMAS WOODALL, ) | |
| JR., ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

This case requires the Court to resolve whether, under Federal Rule of Criminal Procedure 32.1, a defendant arrested on a probation-violation warrant, seen in custody by the Court, and released pending further proceedings, retains a preliminary hearing right post-release. The Court answers this close question in the affirmative.

Defendant, Lawrence Thomas Woodall, Jr.,[1] is before the Court for an alleged probation violation. *See* DE ##78, 79, 80. The violation rests exclusively on a pending state court charge of public intoxication ("PI"). *See* DE #78 (Petition for Warrant for Offender Under Supervision). Upon petition from the United States Probation Office ("USPO"), the District Judge issued a warrant for Woodall's arrest. *See id.* The Marshal executed the warrant and took Woodall into custody on February 19, 2013 (*see* DE #83), and the undersigned conducted Woodall's initial appearance on the alleged probation

---

[1] Woodall pled guilty to one count of passing and uttering counterfeit securities in violation of 18 U.S.C. § 472. *See* DE #70 (Judgment). The District Court sentenced him to a two-year term of probation on February 18, 2011. *See id.*; DE #69 (Sentencing Minute Entry). The USPO petitioned the Court for a warrant on the instant alleged probation violation on February 15, 2013, mere days before Woodall's federal probation was set to expire. *See* DE #78.

1

violation the next day.  *See* DE #80 (Minute Entry for Initial Appearance).  At the initial appearance, Woodall, by counsel, requested a preliminary hearing.  *See id.*  The United States requested a brief continuance.  Without objection from Defendant, the Court continued the hearing two days, until February 22, 2013.  *See id.*  The Court then released Woodall under Rule 32.1(a)(6) pending further proceedings, imposing as bond terms the probation conditions previously ordered by the Court, a requirement that Defendant abide by any terms and conditions of his state bond, and a curfew.  *See id.*

At the preliminary hearing, the Court first heard arguments from counsel on the threshold issue of whether a defendant, arrested on a probation violation warrant but then released is yet entitled to a preliminary hearing under Federal Rule of Criminal Procedure 32.1.  *See* DE #82 (Minute Entry for Preliminary Hearing).  The Court reserved ruling on the issue and provided the parties the opportunity to file post-hearing briefs.  *See id.*  The Court then proceeded with the preliminary hearing and took the matter under advisement.  *See id.*  Both parties filed post-hearing briefs (*see* DE ##84, 85), and the issues are ripe for review.  The Court finds that Rule 32.1 and its constitutional underpinnings do require a preliminary hearing in this context.  In this case, probable cause does not support the probation violation alleged.  Accordingly, the charged violation must be and is DISMISSED.

**I.      Preliminary Hearing Right**

The Court begins by conceding that the applicability of a preliminary hearing in this context is far from clear—both sides have appealing arguments, the rule text stops short of providing an explicit answer, and the foundational cases have language that supports conflicting results.  However, in an effort to best meld the original Supreme

2

Court decisions, the text of the responsive rule, and the rule commentary, the Court determines that the loss of liberty occasioned by arrest, in the probation-violation context, ripens the preliminary hearing right, a right not then extinguished by subsequent release.

Rule 32.1 derives from due process protections recognized, for parolees, by the Supreme Court in *Morrissey v. Brewer*, 92 S. Ct. 2593 (1972). Indeed, the rule often is called a codification of *Morrissey*. *See United States v. Jackson*, 422 F. App'x 408, 410 (6th Cir. 2011) ("The constitutional requirements announced in *Morrissey* are codified in [Rule] 32.1[.]"). The Court later extended the same rights, under the same conditions, to probationers in *Gagnon v. Scarpelli*, 93 S. Ct. 1756, 1760 (1973) ("[A] probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey*[.]").

The Rule itself hinges several processes on whether a person is "held in custody for violating probation or supervised release." A person in that status gets an initial appearance, with the particular location dependent on various case factors. *See* Fed. R. Crim. P. 32.1(a)(1). At any appearance, the Court must inform the defendant of various rights including "the person's right, if held in custody, to a preliminary hearing under Rule 32.1(b)(1)." *See id.* at (a)(3)(C). The particular paragraph defining the hearing itself states:

> If a person is in custody for violating a condition of probation or supervised release, a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred.

*Id.* at 32.1(b)(1)(A). Here, the Marshal arrested Woodall on District Judge Forester's probation violation warrant. The Court thus conducted an initial appearance for Woodall, who at the time of the appearance surely was "held in custody for violating probation."

3

The Court advised Defendant of his preliminary hearing right; Woodall did not waive, and indeed positively asserted, the right. The Court continued the hearing at the request of the United States, but then released Woodall on conditions under Rule 32.1(a)(6) "pending further proceedings." *See* DE #80 (Minute Entry).

The United States contends that the release of Woodall extinguished the preliminary hearing right; the defense contends that the right, once activated, remains. There is authority or argument supporting each side. In particular, the United States cites to the 1979 Advisory Committee Notes. In that discussion, the Notes expressly link the hearing right to continuity in custody, stating that a "preliminary hearing need not be held if the probationer . . . was arrested but obtained his release." *See* Rule 32.1 Advisory Committee Notes, 1979 addition.

The Government further cites *United States v. Sciuto*, 531 F.2d 842, 846-47 (7th Cir. 1976). In *Sciuto*, a pre-rule case, the probationer had been arrested but was "immediately released on bond," *id.* at 844, with no preliminary hearing. He later complained that the denial of a preliminary hearing violated *Morrissey/Gagnon*. The court, noting that none of the defendants in the Supreme Court cases had been released, tied the preliminary hearing right to custody status pending the revocation hearing: "This reason [a "conditional liberty infringement"] for requiring a preliminary hearing is not present when, as here, the probationer is not held in custody to await the revocation hearing." *Id.* at 846 (citations omitted). The United States here, resting on language in *Morrissey, Sciuto*, and the Advisory Committee Notes, views the preliminary hearing as relating only to whether a valid basis for further detention exists, prior to the final revocation hearing. Release of a defendant thus obviates the reason for a hearing.

4

The defense relies both on the particulars of this case and *Morrissey*'s foundations. Here, the only reason a preliminary hearing did not occur at the initial appearance is that the United States sought a continuance. The request was proper and well-founded, but the delay (along with the interim release) created the issue now before the Court. The defense contends that changes in the rule since enactment (*e.g.,* imposition of the initial appearance requirement) support the durability of the right irrespective of release. Woodall further analogizes to Rule 5.1, which extends a preliminary hearing right, as to pre-indictment arrests, irrespective of custodial status.

The Court, with due respect to the arguments of the United States, finds that the preliminary hearing right applies. Simply put, *Sciuto* and the Advisory Committee Note[2] underestimate the bases for *Morrissey*. Both *Morrissey* and the Rule's text it begat here support a right, created by arrest, that survives even if a court releases a probationer pending the preliminary hearing. *Morrissey* found a protected liberty interest in the conditional freedom enjoyed by parolees.[3] This included the reasonable expectation that a parolee would "retain his liberty as long as he substantially abides by the conditions of his parole." *Morrissey*, 92 S. Ct. at 2599. Revocation is a deprivation of that

---

[2] The Court recognizes that the Advisory Committee Notes to the rules typically receive "great weight." *See Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D. Ohio 2000). Here, however, the note cites no authority for the critical stray remark that no hearing applies "if he [the probationer] was arrested but obtained his release." Further, *Sciuto*'s decision rests solely on the fact that *Morrissey*/*Gagnon* did not confront the same factual scenario. That distinction is a legitimate evaluation point, but *Sciuto* does not delve into the cases' analyses in reaching its own conclusion about the significance of custody.

[3] The parallels between parole, probation, and supervised release are not perfect. The court role in process issuance and adjudication is more formal and regimented than the state parole revocation steps addressed in *Morrissey*. Still, *Gagnon* adopted *Morrissey* for probation, and Rule 32.1 codifies the principles of each.

"conditional liberty properly dependent on observance of special parole restrictions." *Id.* at 2600. Though limited, the liberty interest still "includes many of the core values of unqualified liberty," and its termination "inflicts 'grievous loss' on the parolee." *Id.* at 2601. Thus, liberty "termination calls for some orderly process[.]" *Id.*

In constructing an appropriate process, the *Morrissey* Court focused on the need for an accurate (if informal) determination of whether an individual in fact breached conditions. The accuracy function serves both society's interest in appropriate revocation and in "basic fairness" extended to the parole population. *See id.* at 2601-2602.

The Court then outlined the "two important stages in the typical process of . . . revocation." *Id.* at 2602. The first stage occurs "when the parolee is arrested and detained[.]" *Id.* Based on concerns over the possible delay until a final hearing, the potential for geographic separation between germane factual events and a revocation decision, and the need to preserve evidence, the Court determined: "Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* *Morrissey* specified the broad procedural requisites of the preliminary hearing (notice, participation, cross-examination). *See id.* at 2603. The probable cause determination, made by an independent decision maker, would assess "whether there is probable cause to hold the parolee for the final decision . . . on revocation," stage two of the revocation process. *See id.*

This Court must concede that *Morrissey* made debatable references to further detention. It stated that the probable cause finding "would be sufficient to warrant the

6

parolee's continued detention . . . pending the final decision."[4] *Id.* This confirms that, in the particular factual scenario, the parolee indeed was detained throughout. But, would *Morrissey* have said, as the United States contends, that a parolee arrested for a violation, detained pending an initial appearance, but then released, does not have the same preliminary hearing right? Surely, the **fact** of arrest and custody, based on an alleged violation, is the first stage in the process of revocation, one *Morrissey* imbues with procedural importance. The arrest alone acts to terminate the defendant's conditional liberty as a part of the revocation process, even if that termination ends up being only temporary. Whether released or not, the defendant has endured an immediate liberty deprivation. As the court said in *United States v. Tucker*, 524 F.2d 77, 78 (5th Cir. 1975):

> [I]n the typical case of revocation . . . the probationer . . . has been released from incarceration and is at liberty when the revocation proceeding beings. Accordingly, revocation . . . does deprive him immediately of his liberty. It was this deprivation which prompted the Court to determine that a preliminary as well as a final revocation hearing was required to afford the petitioner due process of law.

---

[4] There is nuance in these concepts. For example, the Advisory Committee Notes suggest that the idea of "holding" the probationer is more about whether the merits of the case keep it on the docket than a physical "holding" of the probationer's person. The Notes treat the preliminary hearing query and the issue of further detention as separate matters: "The federal magistrate . . . is to keep a record of what transpires at the hearing and, if he finds probable cause of a violation, hold the probationer for a revocation hearing. The probationer may be released pursuant to [the applicable bond rule] pending the revocation hearing." *See* Advisory Committee Notes, 1979 Addition. Thus, a court under Rule 32.1 may at the same time "hold" a defendant (*i.e.*, keep the matter on the docket for a final hearing) and "release[]" a defendant (*i.e.*, physically free the defendant pending that hearing); *see also* Rule 32.1(a)(5) & (6)(discussing, sequentially, "transfer" of "person" to charging district if probable cause found but also the opportunity for "release . . . pending further proceedings"). Accordingly, *Morrissey*'s comment that probable cause would support continued detention does not necessarily mean that detention at the time of the hearing was a requisite to the hearing itself.

In *Tucker*, the defendant was already in custody on a distinct conviction at the time of attempted revocation.[5] *See id.* Thus, he lost no liberty during the unfolding process, at least not until final revocation occurred: "In such a case, there is no **immediate** loss of freedom which would require the **immediate** probable cause hearing which the *Morrissey* and *Gagnon* Courts deemed necessary." *See id* (emphasis added). Here, Woodall lost liberty immediately via arrest, which signaled commencement of and was the first stage of the pending revocation process. *See also United States v. Strada*, 503 F.2d 1081, 1084 (8th Cir. 1974) ("Thus, *Gagnon* extends the right to such a hearing only to those probationers who are taken into custody and deprived of their conditional freedom.").

The Supreme Court has commented on the relevant preliminary hearing right and significance of arrest in other cases. In *Moody v. Daggett*, 97 S. Ct. 274, 278-79 (1976), the Court assessed revocation hearing delay. In discussing the on-set of procedural protection, under *Morrissey*, the *Moody* Court treated the arrest event as the critical moment of commencement:

> [W]e established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for **the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant**.

*Id.* at 278-79 (emphasis added). Thus, the arrest event is the "operative event" that signals the "loss of liberty" that motivated and invokes the procedures of *Morrissey*.

---

[5] This is consistent with a series of decisions that deny any preliminary hearing if liberty loss results not from the revocation process but from an independent legal proceeding or event, such as a parallel prosecution or conviction. *See, e.g., United States v. Florez-Perez*, 2010 WL 1328580, at *2 (S.D. Cal. Apr. 1, 2010) (collecting cases across circuits for proposition that "probationer does not have a right to a preliminary revocation hearing when he is in custody awaiting prosecution on other charges").

8

Here, Woodall undoubtedly entered custody on and because of the probation warrant. Further, in *Gerstein v. Pugh*, 95 S. Ct. 854, 867 n. 22 (1975), the Court recognized that the function of the preliminary hearing under *Morrissey* is broader than that occasioned by a normal arrest. The Court stated that "a parolee or probationer arrested prior to revocation is entitled to an informal preliminary hearing at the place of arrest, with some provision for live testimony." *Id.* The decision cited hearing purposes as including "gathering and preserving live testimony" based on possible delay until a final hearing. Further, the preliminary hearing does serve a clear screening role: "[R]evocation proceedings may offer less protection from initial error than the more formal criminal process, where violations are defined by statute" and are initiated by a "prosecutor [that] has a professional duty" with respect to probable cause and charge initiation. *See id.*

The Rule text reflects *Morrissey*. It creates a mandatory (though waivable) preliminary hearing obligation triggered by custody. Thus, if a person is in custody on a probation violation, "a magistrate judge **must** promptly conduct a hearing" on probable cause. Fed. R. Crim. P. 32.1(b)(1)(A) (emphasis added). The right accrues for any defendant "held in custody" for a violation—the same prompting verbiage dictates both the initial appearance and the right to the preliminary hearing. The present tense within the Rule is notable—if the person "is" in custody, then a court must "promptly conduct a hearing[.]" *Id.* The requirement attaches at a point in time, but, as to timing, the hearing need only occur promptly; the Rule does not demand revisitation of the defendant's status at the time of the actual hearing. Interestingly, the Rule section governing arrests in a district where a violation occurred but without revocation jurisdiction—Rule 32.1(a)(5)— *unqualifiedly* requires a preliminary hearing.

9

The Rule speaks by creating the hearing right "if a person is in custody" relative to probation or supervised release.[6] It conditions genesis of the right on present detention but does not condition continuation of the right on persistent custody. While the Government's reading is supportable, the contrary view—that once the liberty deprivation occurs, the hearing right accrues and exists without regard to subsequent custodial status—is equally plausible in the text. Indeed, the Rule says custody sparks the right but does not say that release extinguishes that right once created.[7]

A defendant in custody for an alleged violation encounters a certain quandary under the United States's reading. He has been arrested and is "held in custody," thus creating the hearing right at the time of the initial appearance. If the United States is not ready to proceed immediately (and the hearing only need happen "promptly"), then the defendant either must forgo the effort to seek immediate release under Rule 32.1(a)(6) and preserve the hearing right or attempt to gain release at the cost of the chance for a preliminary hearing. The preliminary hearing is about more than release; if a defendant prevails at that hearing, the case itself is over because the court must dismiss the proceeding, per Rule 32.1(b)(1)(C). Further, as *Morrissey* and *Gerstein* indicated, the hearing also implicates perpetuation of evidence in a scenario that could present temporal or geographic challenges.

---

[6] This tracks the principle that, if a defendant is in custody already on a distinct matter, initiation of revocation would work no liberty deprivation, and thus such a defendant would not have a preliminary hearing right. *See Tucker*, 524 F.2d at 78; *Florez-Perez*, 2010 WL 1328580, at *2.

[7] An interesting scenario not presented is one in which a defendant initially appears on a summons, but cannot then secure further release pending a final hearing under Rule 32.1(a)(6).

Woodall's situation here illustrates the problem. The warrant for his arrest occurred just prior to expiration of probation. *See* DE #78. The result of a successful preliminary hearing for him not only would end the revocation effort, it also would signal the end of probation and the jeopardy it entails. Thus, Woodall had a strong interest in the preliminary hearing. He also had a strong interest in securing immediate release, because the District Judge, as is his practice, intended to defer scheduling of any final hearing pending resolution of the precipitating state charges. Forgoing an attempt at securing release could have kept Woodall in custody for an extended period if he lost the preliminary hearing on the merits.

Finally, the Court notes that Woodall, although released at the initial appearance, suffered additional liberty restrictions over and above his prior probation conditions. As a part of release in this case, where the Rule 32.1(a)(6) standard is decidedly pro-government, the Court imposed as bond conditions the prior probation terms, incorporated extant state bond terms, and set a curfew for Woodall. He thus faced a period of restricted liberty that resulted directly from the arrest and resultant bond evaluation.

Because the initial custody creates the hearing right under *Morrissey*, which subsequent release does not eliminate, the Court turns to the merits of the case as presented at the preliminary hearing.

## II.     Probable Cause

The alleged probation violation is commission of a state crime. *See* DE #78. The report incorporates and singly references a state arrest and current state charge.

11

Specifically, Woodall faces a charge in state court for violating Kentucky Revised Statute ("KRS") 525.100, which provides that

> [a] person is guilty of public intoxication when he appears in a public place manifestly under the influence of a controlled substance, or other intoxicating substance, excluding alcohol (unless the alcohol is present in combination with any of the above), not therapeutically administered, to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity.

Violation of KRS 525.100(1) is a Class B misdemeanor. *See id.* at 525.100(2). In Kentucky, a law enforcement officer may arrest an individual for a misdemeanor without a warrant only if a reasonable officer would conclude, under the circumstances, that the offense had been committed in his presence. *See* KRS 431.005(1)(d); *Neal v. Commonwealth*, 2010 WL 890033, at *2 (Ky. App. Mar. 12, 2010). The arrest here was warrantless, and the defense properly contends that the officers thus arrested Woodall for what they perceived when and where they encountered him.

The probable cause standard is familiar. *See United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) ("Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion[.]") (citations and internal quotation marks omitted); *United States v. Kinison*, 2013 WL 1104640, at *3 (6th Cir. 2013) (acknowledging assessment of "totality of the circumstances" in non-rigid "practical and common-sensical" assessment). The hearing featured testimony from Woodall's father-in-law, testimony from the USPO, and admission of some arrest-related records. Importantly, no one from law enforcement with personal knowledge participated. The police citation is the lone charge description.

Based on the preliminary hearing testimony, there is reason to believe that Woodall was intoxicated on the day of his arrest. The citation indicates that Defendant's

speech was slurred and law enforcement discovered an empty bottle of Woodall's Xanax filled just a few days prior to the arrest.[8]  The defense witness corroborated contemporaneous impairment of Woodall.

The issue, however, is whether Woodall, arrested without a warrant, was intoxicated in a **public place**.  That is the state charge, and the arresting officers, to make a valid arrest, must have thought they observed Woodall engaged in the misdemeanor conduct and that such conduct occurred in a "public place."[9]  Defendant shares a residence with his father-in-law, his wife, and his two sons.  At the preliminary hearing, Willis Morris, Defendant's father-in-law, testified credibly and without opposition that although Defendant was outside the residence at some point when Morris placed a call to 911, Defendant was in the residence's living room when law enforcement arrived, and he remained there until placed under arrest.[10]  The 911 "transcript" entered into evidence, such as it is, does not call this testimony into question and indeed supports that Woodall was inside during the time of the police encounter.  No officer appeared at the hearing, and the citation in context indicates the charged conduct temporally occurred only when Woodall would have been inside his home.  Police thus encountered and arrested Woodall in the confines of his own house and charged him with the offense at issue.

Under Kentucky law, the term "public place," as used in KRS 525.100,

---

[8] Based on the testimony of Woodall's supervising officer at the USPO, Defendant has a valid prescription for Xanax.

[9] At the hearing, the United States argued that Woodall could properly have been arrested if the arresting officer was aware that Defendant had been in a public place prior to law enforcement's arrival at the residence.  This simply is not so under Kentucky law because such prior events would not have occurred in the officer's presence.

[10] Morris testified that he called 911 for an ambulance because Woodall slipped and injured his head while carrying items from Morris's car, parked in the residence's driveway, down stairs located outside the home to the basement.

13

> means a place to which the public or a substantial group of persons has access and includes but is not limited to highways, transportation facilities, schools, places of amusement, parks, places of business, playgrounds, and hallways, lobbies, and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence. An act is deemed to occur in a public place if it produces its offensive or prescribed consequences in a public place.

KRS 525.010(3). The Kentucky Court of Appeals has held that this definition of "public place" is broad enough to encompass a front porch, at least so long as there is "no fence, no gate, no dog, no signage," or nothing else that would "impede the public's ready access" to the porch and door. *Neal*, 2010 WL 890033, at *2-3. Similarly, driveways and walkways could constitute "public places," though back doors and backyards generally would fall outside the definition. *See id.* The Kentucky courts, however, have not extended the definition of "public place" to include the living room of a private residence, at least where no offensive consequences are then occurring in public areas.

Thus, on the current record, there is not probable cause supporting the particular state charge. The charge relates only to Woodall's condition inside the home, where police encountered and arrested him. Simply put, there is not a reasonable basis to believe Woodall violated Kentucky law as alleged because a fair reading of the charge-- in light of the timing and the misdemeanor arrest limitations--indicates the officers charged Woodall for perceived intoxication in the confines of his home. Police arrested Woodall for what they encountered; they encountered conduct only in the home, and intoxication within the home is not public intoxication under Kentucky law. The Court thus must dismiss the matter.

### III. Conclusion

Accordingly, for the reasons discussed above, the Court finds that Woodall retained his right to a preliminary hearing following his release. The Court further finds that probable cause does not support the charged probation violation. The Court thus **DISMISSES** the charged violation.

This the 25th day of March, 2013.

Signed By:
*Robert E. Wier* /s/ REW
United States Magistrate Judge